CHANDLER, J.,
for the court.
¶ 1. Sheron Edwards was tried for armed robbery and grand larceny before an Oktibbeha County Circuit Court jury. He was found guilty on both counts. Edwards was sentenced to twenty years for the armed robbery charge and five years for the grand larceny charge to be served consecutively both in the custody of the Mississippi Department of Corrections. Feeling aggrieved, Edwards appeals to this Court and makes two assignments of error. First, Edwards alleges that the trial court erred in denying his motion for a directed verdict or judgment notwithstanding the verdict. He also argues that the trial court erred in allowing a defense witness to mention a previous trial in which charges were prosecuted against Edwards.
FACTS
¶ 2. In the early morning hours of March 13, 1999, Kenneth Burns was returning to his home after a night spent watching a boxing match with Mends. Burns noticed a young man approaching him as he exited his vehicle. The man stepped close to Burns and asked him for directions. The man then pulled out a handgun and pressed it into Burns’s chest. Burns was told to empty his pockets. He handed the man his wallet, car keys, and a money clip. Burns was then instructed to kneel on the ground. While on his knees he was violently struck on the back of the head and fell face forward onto the concrete. Burns then heard a gun shot which made him think he had been shot. Burns saw the man who robbed him exit the parking lot in his vehicle. He then went to a neighbor’s house and asked them to call 911.
¶ 3. Mr. Vincent Forside, who lived on West Main Street in Starkville, testified to hearing screeching tires and seeing a vehicle traveling at an excessive rate of speed on his street. Forside saw the vehicle enter a ninety degree turn, lose control, *992 and strike a light pole just off the road. Forside called 911 to report the accident and then ran to the vehicle to see if the driver or any occupants had been harmed. He found a young man in the driver’s seat who at first appeared to be dazed. For-side stated that the man became more aware and began searching the vehicle “as if he was looking for something in the backseat.” Forside then stated that the man “threw stuff in the wooded area along the road.”
¶ 4. Detective Lott with the Starkville Police Department responded to the scene of the accident. Officer Gandy arrived soon after Detective Lott. When the two approached the vehicle, they noticed a young man standing near the driver’s door. While there, police dispatch issued a call describing a man matching Edwards’s appearance as a suspect in a recent armed robbery. The burgundy and gold GMC matched the description of the vehicle reported stolen during the robbery. Lott and Gandy agreed that Edwards matched the description given of the suspect. Edwards was then arrested and placed in the backseat of Lott’s car.
¶5. Officer Edmonds of the Starkville Police Department responded to the call at Burns’s apartment. Edmonds told Burns that a vehicle matching the description he had given to the 911 operator was found wrecked just a few minutes after Burns notified the police of the robbery. Ed-monds took Burns to the scene of the wreck. At that time Burns identified the burgundy and gold GMC vehicle as the one stolen from him just a few minutes earlier. Edwards was removed from Lott’s vehicle and Burns identified him as the man who had robbed him and stolen his vehicle. When Lott removed Edwards from his car, he noticed a wallet on the floor board. A search of the wallet revealed Burns’s identification. Burns identified the wallet as the one taken from him during the robbery.
¶ 6. Officer Edmond returned to the scene of the crime when he transported Burns back to his home. At that time, Edmond searched the bushes surrounding the area where Burns indicated that the robbery took place. Edmond found a bullet casing which was later matched to the firearm found in Edwards’s possession at the time he was arrested.
¶ 7. Edwards was transported to the Starkville Police Department. The police found a set of keys on Edwards which Burns later identified as his car keys. Edwards was indicted for armed robbery and grand larceny. He was found guilty of both crimes.
LAW AND ANALYSIS
I. DID THE TRIAL COURT ERR IN DENYING EDWARDS’S MOTION FOR A DIRECTED VERDICT OR HIS MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 8. Edwards argues on appeal that the trial court erred in denying his motion for a directed verdict at the close of the State’s evidence and for denying his motion for judgment notwithstanding the verdict. He argues that the State failed to produce sufficient evidence to support a conviction against him.
¶ 9. Whether the evidence is legally sufficient is an argument that is raised by a motion for a directed verdict or a JNOV. McClain v. State, 625 So.2d 774, 781 (Miss.1993). In deciding whether the prosecution has presented sufficient evidence to sustain the verdict, the court should accept as true all credible evidence consistent with the defendant’s guilt and the State must be given the benefit of all favorable inferences that may be reason *993 ably drawn from the evidence. Id. A reviewing court should only reverse where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 812 (Miss.1987).
¶ 10. Applying the legal standard recited above and considering the testimony given, the evidence presented at trial was sufficient to support the jury’s verdict. Burns testified that he was within arms length of Edwards at the time of the robbery and “looked him directly in the eye.” There were two streetlights near the crime scene. An eyewitness, Forside, testified that he observed the vehicle from the time it crashed into the light pole until the police arrived. He stated that at no time did he see anyone other than Edwards in or near the vehicle. Burns’s keys and wallet were both found in Edwards’s possession as was the gun that was used to rob Burns. This evidence is sufficient to support the jury’s verdict; as such, this assignment of error is without merit.
II. DID THE TRIAL COURT ERR IN ALLOWING A WITNESS TO MENTION A PREVIOUS TRIAL IN WHICH CHARGES WERE PROSECUTED AGAINST EDWARDS?
¶ 11. On appeal, Edwards argues that the trial court erred in allowing the State to impeach a witness, Cleveland Carlisle, with a transcript from a previous hearing in which Carlisle was also a witness. He maintains that the court should have applied a balancing test under Mississippi Rules of Evidence 403 and determined that mention of the previous trial was more prejudicial than probative. Edwards further argues that his counsel at trial was not allowed to state the grounds for her objection or make a record of the objection. Both of these statements are contradicted by the record.
¶ 12. At trial, counsel for Edwards objected to mention of the transcript from the previous hearing as a discovery violation. The trial court ruled that the transcript was used to impeach a defense witness concerning a prior inconsistent statement and overruled the objection.
¶ 13. This issue is subject to a procedural bar. An objection on one or more specific grounds at trial constitutes a waiver of all other grounds for objection on appeal. Gray v. State, 728 So.2d 36 (¶ 110) (Miss.1998). At trial, Edwards argued the State had committed a discovery violation; on appeal he alleges that impeachment of the witness by means of the transcript from a previous trial was prejudicial and should have been excluded pursuant to M.R.E. 403.
¶ 14. Notwithstanding the procedural bar, this issue is without merit. Mississippi Rules of Evidence 403 states in pertinent part “[ajlthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury-” To decide whether evidence should be admitted, the trial court must conduct a balancing test to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Sykes v. State, 749 So.2d 239(¶ 24) (Miss. Ct.App.1999). This balancing test is left to the trial court’s broad discretion. Id. This Court will not reverse the trial court’s decision unless there was an abuse of discretion. Id.
¶ 15. Cleveland Carlisle was asked on cross-examination by the State concerning a prior hearing because his testimony on direct differed greatly from his previous testimony at a trial in federal court in *994 Oxford concerning the same matter. The State asked if he remembered testifying at “another hearing involving this matter in August of 1999.” To which, Carlisle replied, “[i]n Oxford?”
¶ 16. The State used the transcript from that previous trial to impeach Car-lisle’s testimony at the ongoing trial in state court. The State did not mention that the “hearing” was a trial in federal court in which Edwards was prosecuted for related charges. Edwards argues that because the federal courthouse is in Oxford, members of the jury could have deduced that Edwards had been previously tried in federal court on these charges.
¶ 17. The trial court did not abuse its discretion in allowing the State to use the transcript to impeach the witness. The transcript was a prior inconsistent statement given under oath at a trial or hearing. As such, it was properly used to impeach the witness pursuant to M.R.E. 801(d)(1).
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION OF COUNT ONE, ARMED ROBBERY, AND SENTENCE OF TWENTY YEARS TO RUN CONSECUTIVELY TO ANY PREVIOUSLY IMPOSED SENTENCE WITHOUT THE POSSIBILITY OF PAROLE; COUNT THREE, TAKING OF A MOTOR VEHICLE AND SENTENCE OF FIVE YEARS TO RUN CONCURRENTLY WITH THE SENTENCE IMPOSED IN COUNT ONE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO OKTIB-BEHA COUNTY.
McMILLIN, C.J., KING AND SOUTH-WICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ„ CONCUR.